LAW OFFICE OF MICHAEL L. FRADIN
Michael L. Fradin, Esq.
8 N. Court St. Suite 403
Athens, Ohio 45701
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com

Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| Jeff Sutton<br><br>              Plaintiff,<br>vs.<br><br>The SYGMA Network, Inc.,<br>Timothy Egan,<br><br>              Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>**Uniformed Services Employment and Reemployment Rights Act (USERRA)**<br><br>**Ohio Revised Code § 4112.02**<br><br>         **JURY TRIAL DEMANDED** |

### I. Preliminary Statement

Plaintiff Jeff Sutton ("Sutton") by and through his undersigned attorney, Michael L. Fradin, brings this action against Defendant The SYGMA Network, Inc. ("SYGMA") and Defendant Timothy Egan ("Egan"), who together will be referred to as "Defendants," and alleges as follows:

### II. Introduction

1. This is an action to redress Defendants' unlawful systemic and individual discriminatory employment practices and retaliation committed against Mr. Sutton which took place on the basis of Mr. Sutton's status as a military and armed forces veteran. The discriminatory employment practices and disparate treatment that Mr. Sutton was forced to endure occurred in violation of the Uniformed Services Employment and Reemployment Rights

Act (USERRA) 38 U.S. Code § 4301-4335 a federal law which forbids employment discrimination on the basis military and armed forces veteran status, 38 U.S. Code § 4311 and Ohio Revised Code § 4112.02, which forbids employment discrimination based on military and armed forces veteran status.

### III.    Jurisdiction and Venue

2. Pursuant to 28 U.S.C. § 1331, this Court has federal-question jurisdiction over the federal law claims arising under the USERRA.

3. This Court has supplemental jurisdiction over Plaintiff's state-law claims because those claims derive from the same common conduct that led to violations of the federal laws in question; that is, the federal claims and Ohio claims all derive from the same common nucleus of operative facts. 28 U.S.C. § 1367.

4. Pursuant to 28 U.S.C. § 1391, venue is proper in this judicial district because the facts and events giving rise to Plaintiff's claims occurred in Ohio and within this judicial district.

### IV.    The Parties

#### A. Plaintiff

5. The Plaintiff in this Complaint is Mr. Jeff Sutton. Mr. Jeff Sutton was employed by Defendant SYGMA for over ten years, from November 2, 2006 until his termination on October 24, 2017. The most recent title and position he held with Defendant SYGMA was Logistics Manager, a position he was employed in for two years. Mr. Sutton is a military and armed forces veteran. His veteran status is the basis on which he was discriminated against in the workplace by his supervisor Timothy Egan and by Defendant SYGMA. Mr. Sutton held six different positions and titles during his the almost eleven years he was employed by Defendant SYGMA. Mr. Sutton had received overwhelmingly positive and complimentary performance reviews and was a highly valued employee until Timothy Egan became his supervisor in 2016.

#### B. Defendants

6. Defendant SYGMA is a food distribution corporation founded in 1984. Defendant SYGMA distributes food and non-food products to restaurant chains throughout the United States. Defendant SYGMA is headquartered at 5550 Blazer Parkway, Suite 300, Dublin OH 43017. The SYGMA Network, Inc. operates as subsidiary of Sysco Corporation.

7. Defendant Timothy Egan is employed by Defendant SYGMA as Vice President of Logistics. Timothy Egan became Mr. Sutton's direct supervisor in 2016. During the time

Timothy Egan was Mr. Sutton's direct supervisor he discriminated against Mr. Sutton on the basis of Mr. Sutton's military veteran status, resulting in the eventual termination of Mr. Sutton's employment.

## V. Factual Allegations

### A. Mr. Sutton Received Overwhelmingly Positive Performance Reviews Prior to the Arrival of Tim Egan

8. Defendant SYGMA evaluates employees on a yearly basis. Generally, these evaluations involve the employee's performance and progression being ranked in several categories on an scale from:

   a. Significant Above Target (SAT)
   b. Above Target (AT)
   c. On Target (OT)
   d. Below Target (BT)
   e. Significant Below Target (SBT)

9. Mr. Sutton consistently received overall positive performance review prior to the arrival of Timothy Egan as Mr. Sutton's direct supervisor.

10. Mr. Sutton never received an overall employee performance review below On Target (OT) prior to the arrival of Timothy Egan as Mr. Sutton's direct supervisor.

11. Mr. Sutton's overall employee performance was reviewed as Significantly Above Target (SAT) in 2011, 2012, 2013and 2015, and was reviewed as Above Target (AT) in 2014.

12. Mr. Sutton received his first BT (Below Target) employee performance review on August 25, 2017, after working for a full review cycle under the direct supervision of Timothy Egan, who consistently discriminated against Mr. Sutton on the basis of Mr. Sutton's military veteran status.

### B. Defendant SYGMA's Internal Code of Conduct Prohibits Workplace Discrimination, Harassment, and Bullying and Prohibits Retaliation Against Employees Who Report Workplace Discrimination, Harassment, and Bullying

13. Defendant SYGMA's internal code of conduct and company policy prohibits workplace discrimination, harassment, and bullying:

> "Harassment Free Workplace – All associated are entitled to work in an
> environment that is free from harassment, bullying and discrimination. We do not

tolerate any form of abuse or harassment. This includes, but is not limited to, unwelcome verbal, visual, physical or other conduct of any kind that creates an intimidating offensive or hostile work environment, as well as any form of sexual harassment. Sysco [Defendant SYGMA's parent company] expects all associates to contribute to a positive and inclusive work environment where every individual is treated with dignity and respect. . . . Employment related decisions should never be based on age, gender, gender identity/expression, sexual orientation, race, color, ethnicity, national origin, religion, physical or mental disability, veteran status . . ."

14. Defendant SYGMA's internal code of conduct and company policy prohibits retaliation against employees who report instances of workplace discrimination, harassment, and bullying: "Sysco prohibits retaliation against anyone who reports a concern in good faith or who participates in an internal or external investigation."

### C. Plaintiff Sutton Was Subjected to Discrimination and Disparate Treatment From Timothy Egan and SYGMA As a Result of His Status As a Military and Armed Forced Veteran

15. SYGMA and Timothy Egan discriminated against Mr. Sutton and other employees on that basis of their military veteran status.

16. This discrimination often took the form of heightened work expectations that were not required or expected of non-veteran employees, as well as heightened levels of discipline, reprimand, and retaliation that were similarly also not given to non-veteran employees. This heightened level of discipline often took the form of aggressively condescending and public (both verbal and text-based) reprimand, in front of coworkers and clients alike.

17. During the time that Mr. Sutton spent working at SYGMA under Timothy Egan, Egan frequently and consistently referred to Mr. Sutton by names and titles that are explicitly related to military and armed forces service.

18. Most often this took the shape of (but was not limited to) Timothy Egan referring to Mr. Sutton as "Airborne" in verbal and text-based communications.

19. "Airborne" is a slang term used in some branches and divisions of the military and armed forces. Timothy Egan's constant use of the title "Airborne" in reference to Mr. Sutton

is a reference to Mr. Sutton's military veteran status and an indication that Timothy Egan treated Mr. Sutton disparately due to Mr. Sutton's military veteran status.

20. Attached to this Complaint and labeled as Exhibits A, B, C, and D are several examples of instances where Timothy Egan referred to Mr. Sutton as "Airborne" in the context of discussing Mr. Sutton's work responsibilities, assignments, and other work-related activities. Timothy Egan frequently referred to Mr. Sutton as "Airborne" when he was making heightened work requests of Mr. Sutton. These heightened work requests generally took the form of last minute orders and requests for Mr. Sutton to complete work.

21. These heightened work requests were often made on weekdays late into the evening and on weekends. While Mr. Sutton was required and expected to respond to Timothy Egan's late-night and weekend work requests, Mr. Sutton's co-workers (non-veterans) were not expected to, or constantly asked, to complete last minute assignments on late weeknight evenings or weekends.

22. Attached and labeled as Exhibit A is an example of Timothy Egan contacting Mr. Sutton in a work-related capacity at 2:40 PM on August 7, 2016, a Sunday afternoon. Timothy Egan begins the exchange by referring to Mr. Sutton as "Airborne."

23. Attached and labeled as Exhibit B is an example of Timothy Egan contacting Mr. Sutton in a work-related capacity at 6:42 PM on October 2, 2016, a Sunday evening. Timothy Egan begins the exchange by referring to Mr. Sutton as "Airborne."

24. Attached and labeled as Exhibit C is an example of Timothy Egan contacting Mr. Sutton in a work-related capacity at 6:46 PM on October 4, 2017, a Tuesday evening well after work hours. Timothy Egan begins the exchange by referring to Mr. Sutton as "Airborne."

25. Attached and labeled as Exhibit D is an example of Timothy Egan contacting Mr. Sutton in a work-related capacity at 10:41 PM on November 15, 2017, a Tuesday night. Timothy Egan closes the exchange by referring to Mr. Sutton as "Airborne" and telling him that "leaders never sleep."

26. Attached and labeled as Exhibit E is an example of Timothy Egan contacting Mr. Sutton in a work-related capacity at 1:53 on Monday, October 10, 2017. Timothy Egan begins the exchange by referring to Mr. Sutton as "Airborne."

27. Despite Mr. Sutton's attempts to maintain a professional and cordial work environment and relationship with Timothy Egan, Timothy Egan continually referred to Mr.

Sutton by military slang and terminology such as "Airborne" while subjecting Mr. Sutton to disparate treatment in the workplace on the basis of Mr. Sutton's military veteran status.

28. During the time that Mr. Sutton spent working at SYGMA under Timothy Egan, Egan consistently laced his communications with Mr. Sutton with military and armed forces type language, nomenclature, and slang.

29. This type of language included, but is not limited to, phrases such as "10-4" and "HUA" which are both military terms meant to indicate acknowledgement and affirmation.

30. Timothy Egan's frequent and constant use of this type of language and terminology in his verbal and text-based communications with Mr. Sutton is reference to Mr. Sutton's military veteran status and an indication that Timothy Egan treated Mr. Sutton disparately due to Mr. Sutton's military veteran status.

31. Attached and labeled as Exhibit F is an example of Timothy Egan using military slang and terminology in a work-related capacity with Mr. Sutton. At 9:02 PM on August 7, 2016, a Sunday evening, Timothy Egan closes a work-related conversation with Mr. Sutton with "10-4," a military slang term that signals affirmation.

32. Attached and labeled as Exhibit G is an example of Timothy Egan using military slang and terminology in a work-related capacity with Mr. Sutton. In the attached text message from early December 2016, Timothy Egan closes a work-related conversation with Mr. Sutton with "10-4 Sir! HUA," both "10-4" and "HUA" are military slang terms that signal affirmation.

33. On the evening of October 4, 2017, Timothy Egan sent Mr. Sutton a text message (after work hours—a constant feature of Timothy Egan's communication with Mr. Sutton) in which he explicitly referred to Mr. Sutton's military veteran status in relation to his work duties and expectations. This text message (attached as Exhibit C) states:

> Tue, Oct 4, 6:46 PM
>
> Airborne, I know being a leader isn't always easy. The military taught us that "leadership is an obligation to work harder, not an excuse to work less." Sometimes that's a hard credo to live by, especially when we have family to attend. Thanks for your dedication – I'm heading to grab Joe n Jeff but call me with any issues.
> Sincerely, T
>
> 6:46 PM

34. Despite Mr. Sutton's attempts to maintain a professional and cordial work environment and relationship with Timothy Egan, Timothy Egan continually laced his verbal and text-based communications with Mr. Sutton with military slang and terminology such as "10-4" and "HUA," while subjecting Mr. Sutton to disparate treatment in the workplace on the basis of Mr. Sutton's military veteran status.

35. Timothy Egan engaged in a similar pattern of discriminatory behavior against Mr. Sutton's coworker, Doug Kilbarger, who is also a military and armed forces veteran. Mr. Kilbarger is a 20-year retired navy veteran and was subjected to the same type of disparate treatment that Mr. Sutton was subjected to on the basis of military veteran status.

36. Mr. Sutton witnessed Timothy Egan address and refer to Mr. Kilbarger using terminology and language like "Squid," a slang term for naval personnel. Timothy Egan used the slang term "Squid" with Mr. Kilbarger in a similar fashion to how he used the slang term "Airborne" to address and refer to Mr. Sutton.

37. Timothy Egan told Mr. Kilbarger, like he told Mr. Sutton, that more was expected of him at work because he had prior military and armed forces service.

38. This type of employment practice amounts to discriminatory and disparate treatment of military and armed forces veterans. Timothy Egan specifically told Mr. Kilbarger that more was expected of him due to his military veteran status after a performance review.

39. Upon leaving the review, Mr. Kilbarger and Mr. Sutton had a conversation in which Mr. Kilbarger told Mr. Sutton about the heightened expectations he was to be subjected to and the disparate treatment he received from Timothy Egan and SYGMA as a result of his military veteran status.

40. On at least one occasion, Mr. Sutton witnessed Timothy Egan single out Mr. Kilbarger in front of coworkers for the same type of aggressive and condescending public reprimand that Mr. Sutton was often subjected to as part of the disparate treatment he received due to his military veteran status.

41. Timothy Egan's constant use of military-infused language and terminology when communicating with the military and armed forces veterans he supervised, particularly Mr. Sutton and Mr. Kilbarger, in conjunction with the heightened expectations and workload Timothy Egan gave them, as well as the aggressive, condescending, and public reprimand he gave them demonstrates that SYGMA and Timothy Egan maintained a hostile work environment for military and armed forces veterans, a protected class under Ohio state law and a class protected under the Uniformed Services Employment and Reemployment Rights Act (USERRA).

### D. Plaintiff Sutton Was Subjected To A Hostile Work Environment By SYGMA and Tim Egan

42. Timothy Egan maintained a hostile work environment vis-à-vis Timothy Egan and other military and armed forces veterans by continually subjecting Mr. Sutton to disparate and discriminatory treatment while he was Mr. Sutton's direct supervisor.

43. Timothy Egan continually failed to send meeting invitations to Mr. Sutton, but would then heckle Mr. Sutton when he did not attend these meetings. Timothy Egan also exhibited this particular style of hostility toward Mr. Sutton's coworker, Doug Kilbarger.

44. Under the direct supervision of Timothy Egan, employees subordinate to Mr. Sutton were allowed and encouraged to behave in an aggressive and hostile manner toward Mr. Sutton and his leadership.

45. Joe Totino, Jason Blankenship, and Matt Burkey are all employees in subordinate positions and titles to Mr. Sutton who were given carte blanche to thumb their nose at tasks and assignments requested by Mr. Sutton and openly disrespect and intimidate Mr. Sutton.

46. Employees were allowed and encouraged to openly mock tasks Mr. Sutton requested and emails Mr. Sutton sent, such as an incident when Mr. Sutton overheard Joe Totino and Matt Burkey mocking a message Mr. Sutton had sent, saying, "I guess we aren't smart enough to get it."

47. On March 31, 2017, Mr. Sutton requested, via email, a task to be completed by Jason Blankenship by April 7, 2017. That day, Jason Blankenship replied and confirmed receipt of the email and assignment.

48. On April 18, 2017, Mr. Sutton sent Jason Blankenship an email inquiring about the status of the task he asked Jason Blankenship to complete. Jason Blankenship had not completed the task and created an excuse as to why he had not done so.

49. In a meeting between Timothy Egan, Jason Blankenship, and Mr. Sutton concerning the issue of this uncompleted task, Timothy Egan backed Jason Blankenship on the matter and allowed Jason Blankenship to verbally disrespect Mr. Sutton and to maintain an aggressive, physically intimidating demeanor. Timothy Egan encouraged Mr. Sutton's coworkers to engage him in a hostile, aggressive, and intimidating manner.

50. After the meeting concerning Jason Blankenship's failure to complete necessary tasks in which Timothy Egan backed Jason Blankenship over Mr. Sutton, Mr. Sutton expressed to Timothy Egan that he was not satisfied with how he handled the situation between Mr. Sutton and Jason Blankenship. In response to Mr. Sutton's complaint, Timothy Egan expressed irritation and called a team meeting. During his team meeting Timothy Egan showed a famous scene from the movie *Untouchables* (1987) commonly referred to as "Batter Up," in which Al Capone (played by Robert De Niro) beats another gangster to death with a baseball bat for being a weak team member. It was clear that in this analogy Timothy Egan was Al Capone and Mr. Sutton was the character who was killed.

51. Timothy Egan showed blatant favoritism toward the non-veteran employees who he allowed and encouraged to disrespect, disobey, and intimidate Mr. Sutton, often bringing snacks into the office and only offering them to individuals such as Jacob Forbes, Jason Blaneknship, and Matt Burkey. This is an indication of Timothy Egan's pattern of discrimination and disparate treatment.

52. Timothy Egan rarely spoke to or addressed Mr. Sutton at work except to request Mr. Sutton to perform additional work. Whenever Mr. Sutton attempted to approach Timothy Egan at work to talk he would be told that Timothy Egan was too busy (usually Timothy Egan would tell Mr. Sutton that he was busy completing a report for an executive, or some other similar excuse). Usually 15 or 20 minutes later, Mr. Sutton would see Timothy Egan talking

casually with one of his other favored team members for substantial amounts of time (15 to 30 or more minutes), despite claiming to be unavailable for work-related conversation with Mr. Sutton.

### E. Defendant SYGMA and Timothy Egan Maintained a Hostile Work Environment and Retaliated Against Mr. Sutton When He Attempted to Report the Harassment and Discrimination to Human Resources

53. After enduring a hostile work environment and the disparate treatment and discrimination by his supervisor Timothy Egan (and others) for several months, on the afternoon of May 25, 2017, Mr. Sutton made a formal attempt to diffuse the situation by requesting a meeting with Timothy Egan with a third party, possibly a representative from human resources, present.

54. In response to Mr. Sutton suggesting a meeting between Timothy Egan and himself with a third party present, Timothy Egan threatened Mr. Sutton by telling Mr. Sutton that his HR file was large and that Timothy Egan was his only friend and person in the department on his side. Timothy Egan told Mr. Sutton, "If you want to go down that path, it won't be pretty."

55. This was a threat, retaliatory in nature, designed to convince Mr. Sutton that it would be in his best interest to not report Timothy Egan's discriminatory and disparate treatment.

56. Mr. Sutton reported Timothy Egan internally to Defendant SYGMA's Human Resources Department for the workplace discrimination, harassment, and bullying as the hostile work environment that Timothy Egan had cultivated. Mr. Sutton also reported the aggressive, hostile, and insubordinate treatment he was receiving from subordinate employees Joe Totino, Jason Blankenship, and Matt Burkey, and that Timothy Egan had condoned this behavior when it was directed toward Mr. Sutton.

57. Joe Totino, Jason Blankenship, and Matt Burkey were not disciplined for demonstrating blatant disrespect toward Mr. Sutton and contributing to a hostile work environment.

58. Timothy Egan insinuated that Mr. Sutton was targeting Joe Totino, an employee subordinate to Mr. Sutton. Timothy Egan went as far as to disparagingly refer to Mr. Sutton as "emotional" in front of Ellen Jones, the Vice President of Human Resources. This was an attempt to besmirch Mr. Sutton's character in front of an individual with power over deciding whether or not Mr. Sutton would be terminated.

59. Timothy Egan's claim that Mr. Sutton was targeting Joe Totino is contradicted by the fact that Timothy Egan had on multiple occasions expressed dissatisfaction with Joe Totino's inability to perform and handle simple tasks. Timothy Egan's claim is further contradicted by the fact that Mr. Sutton had constantly given Joe Totino the benefit out of the doubt and gone out of his way to offer positive reinforcement to Joe Totino when he did successfully complete tasks.

60. After May 25, 2017, when Mr. Sutton suggested a conversation between himself and Timothy Egan with a third party present, Timothy Egan began highly scrutinizing Mr. Sutton's work.

61. Mr. Sutton's HR file and performance reviews prior to the arrival of Timothy Egan were overwhelmingly positive and always satisfactory.

62. Timothy Egan's targeting and excessive scrutiny of Mr. Sutton was done in a retaliatory manner and in response to Mr. Sutton reporting the discriminatory conduct and with the intent of building an HR file on Mr. Sutton that would allow for Mr. Sutton's eventual demotion and/or termination.

63. On June 20, 2017, Mr. Sutton applied for a Corporate Account Manager position with SYGMA in an attempt to remove himself from the hostile work environment he was subjected by Timothy Egan and others.

64. Mr. Sutton met or exceeded all of the listed requirements for the position of Corporate Account Manager.

65. Mr. Sutton was not hired for the position of Corporate Account Manager and was told that he was removed from the pool of candidates because he was not "nearly as qualified" as other candidates who were applying for the position.

66. On the morning of October 16, 2017. Timothy Egan called Mr. Sutton on his cellphone and began loudly and aggressively berating Mr. Sutton and accusing him of not following directions. Mr. Sutton had followed the directions given to him by Timothy Egan, but Timothy Egan was unwilling to listen to Mr. Sutton. Despite Mr. Sutton's reasonable request that Timothy Egan talk to him in a civil, non-hostile manner, Timothy Egan continued to berate Mr. Sutton. Timothy Egan was completely unwilling to discuss the issue with Mr. Sutton in any kind of normal, civil, reasonable, respectful, or work-appropriate tone.

67. On October 24, 2017, Defendant SYGMA presented Mr. Sutton with a Separation Agreement, terminating his employment with the company after Mr. Sutton had been a successful and highly-reviewed employee within SYGMA for over ten years.

68. While Mr. Sutton has been terminated from his longtime position with The SYGMA Network, Inc., Timothy Egan remains employed as Defendant SYGMA's Vice President of Logistics.

69. Timothy Egan was never punished or reprimanded for engaging in discriminatory employment practices and disparate treatment of Mr. Sutton on the basis of his military veteran status and despite notice of the discrimination, SYGMA took no steps towards remediation.

## VI. Claims for Relief
## Count One – Violations of the Uniformed Services Employment and Reemployment Rights Act (USERRA)

70. Plaintiff re-alleges and incorporates by this reference each of the preceding and foregoing paragraphs as if fully set forth herein.

71. By discriminating against Plaintiff Sutton on the basis of his military veteran status, Defendants SYGMA and Timothy Egan violated the USERRA which prohibits employers from discriminating against past and present members of the military and armed forces.

72. By retaliating against Plaintiff Sutton for reporting violations of the USERRA, Defendants SYGMA and Timothy Egan violated the USERRA which prohibits retaliating against or taking any adverse employment action against an employee who reports violations of the USERRA.

73. By discriminating against Plaintiff Sutton on the basis of his military veteran status and retaliating against him for reporting his discrimination (ultimately terminating his employment), Defendants SYGMA and Timothy Egan violated 38 U.S. Code § 4311 which prohibits employers from discriminating against and retaliating against past and present members of the military and armed forces

74. Defendants SYGMA and Timothy Egan's conduct as described herein otherwise violates the USERRA.

75. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff Sutton has sustained injuries and damages including, but not limited to, loss of earnings

and earning capacity; loss of career opportunities; mental anguish; emotional distress; humiliation and embarrassment; and loss of professional reputation.

76. Defendants' unlawful conduct in violation of the USERRA was purposeful and malicious, was intended to injure Plaintiff Sutton, and was done with conscious disregard of Plaintiff's rights to a workplace free from discrimination and harassment based on veteran status, entitling Plaintiff Sutton to an award of punitive damages.

### Count Three – Violations of Ohio Revised Code § 4112.02 Unlawful discriminatory practices

77. Plaintiff re-alleges and incorporates by this reference each of the preceding and foregoing paragraphs as if fully set forth herein.

78. By discriminating against Plaintiff Sutton on the basis of his military veteran status and retaliating against him for reporting his discrimination (ultimately terminating his employment), Defendants SYGMA and Timothy Egan violated O.R.C. Code § 4112.02 which prohibits employers from discriminating against employees on the basis of military and veteran status.

79. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff Sutton has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; mental anguish; emotional distress; humiliation and embarrassment; and loss of professional reputation.

80. Defendants' unlawful conduct in violation of O.R.C. § 4112.02 was purposeful and malicious, was intended to injure Plaintiff Sutton, and was done with conscious regard of Plaintiff's rights to a workplace free from discrimination and harassment based on military and veteran status, entitling Plaintiff Sutton to an award of punitive damages.

## VII. Prayer for Relief

81. WHEREFORE, Plaintiff Sutton respectfully prays that the Court grant the following relief:

　　a. Enter a declaratory judgment finding that the foregoing actions of the Defendants violate the USERRA and O.R.C. § 4112.02;

　　b. Award compensatory damage to Plaintiff in an amount to be determined by a jury that would fully compensate Plaintiff for economic loss, past and future earnings

that would have been gained, past and future lost wages, past and future lost bonuses, past and future lost benefits and promotions, humiliation, embarrassment and emotional distress;

c. Award punitive damages to Plaintiff in an amount to be determined by the jury that would punish Defendants for the willful, wanton, and reckless conduct alleged herein and that would effectively deter similar conduct in the future;

d. Award Plaintiff his reasonable attorneys' fees and costs; and

e. Order such other relief as the Court deems just equitable.

## VIII. Demand for Jury Trial

82. Plaintiff demands a jury trial on all causes of action and claims with respect to which he has a state and/or federal constitutional right to a jury trial.

Respectfully submitted,

Plaintiff Sutton

DATED: July 13, 2018

s/ *Michael L. Fradin*
Attorney for Plaintiff
Michael L. Fradin, Esq.
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228

Email: mike@fradinlaw.com